Good morning. Welcome. So before we begin today, Judge Fletcher and I would like to thank our colleague Judge Kane from the Middle District of Pennsylvania, who is sitting with us. We are so grateful for her being here and for assisting the circuit. So thank you so much and welcome. We're going to hear the cases in the order. They're listed on the calendar. Five of them have already been heard. Case number 18, 170479, Lima Ferreira v. Garland. Case number 18, 173480, Wong v. Garland. Case number 20, 71165, Alvarez-Casares v. Garland. Case number 21, 16047, Clemente v. Kijikazi. And finally, case number 21-70349, Vargas-Gonzalez v. Garland. So the first case for argument is case number 20-71825, Laurencio Cespedes v. Garland. Each side will have 10 minutes. I would just note at the beginning that counsel for the petitioner is pro bono and we thank you for your pro bono service. So, Ms. Miranda, how much time would you like to reserve for rebuttal? I'd like to reserve two minutes, Your Honor. All right. If you would please proceed when you're ready. Good morning, Your Honors, and may it please the Court. I am Erika Miranda of Kecker Van Ness Van Peters on behalf of Petitioner Ade Laurencio Cespedes. This Court repeatedly underscores the value of determining cases based on a fairly developed record, including those cases which involved some of society's most vulnerable individuals, detained, non-English speaking asylum seekers who proceed unrepresented through the labyrinth that is the American immigration system. Ms. Laurencio, who falls into this category of particularly vulnerable individuals, was denied the opportunity to fairly present her case as reflected by the numerous and disconcerting procedural abnormalities in the immigration court. The IJ refused to allow Ms. Laurencio to tell her story, refused to allow Ms. Laurencio to even mark her evidence for identification, and delegated the summarization of that evidence to Ms. Laurencio's adversary in the courtroom, the government attorney, the government attorney who admitted that he had not that he did not dig that far into the documents. Now, but the reason he didn't get that far into the documents was this was the first time he saw them, correct? That's correct, Your Honor, but... Mr. Hay was handed this stack of documents and said, this is a half-inch stick, Your Honor, and he kind of flips through them. And that's part of the problem, Your Honor. The fact that the government attorney was asked to summarize for the court petitioner's documents, it is unusual. The IJ could have asked Ms. Laurencio to summarize her documents. She did not. Instead, she asked the government attorney to pilfer through the stack of documents that Ms. Laurencio brought to her merits hearing and summarize those documents based on a few, summing through a few pages. Let me ask you another question. In the briefs, the petitioner argues that the court cannot consider any additional reasons that the immigration judge gave for denying the continuance. Do you have any authority that holds that this court can't consider an elaboration of a decision made in a subsequent merits order or at the merits hearing? I don't have a citation to a particular authority, Your Honor, but what happened here is that the IJ sought to, post hoc, justify her reasons for denying the continuance while simultaneously preventing Ms. Cespedes that same opportunity to explain the reasons for needing the continuance. But we are allowed to consider those additional reasons, correct? Our position is that the order is the moment in which the motion for a continuance was denied. But to the extent the court disagrees and proceeds to consider the remainder of the explanation given at the oral argument and in the post hoc rationale in her decision, then the court must consider the fact that she also precluded Ms. Latencio that same opportunity. This preclusion and this failure to identify any of the off-med factors also constitutes a denial, an abuse of her discretion in whether or not to grant that continuance. Factors weigh in petitioner's favor. The four factors at issue. Can you elaborate how they would weigh in your client's favor, had the IJ considered the four factors? Yes, absolutely. So the first factor is that the nature of the evidence excluded. And Ms. Latencio, a pro se detained petitioner, was seeking documents from outside detention, which undoubtedly would have borne on the merits of her application for asylum. Second, if the court considers the reasonableness of Ms. Latencio's conduct and has repeatedly instructed courts to consider the circumstances around the continuance. First, Ms. Latencio had only had two months before the evidence deadline lapsed. She was detained without access to counsel and was unable to go out and procure all of her evidence as somebody who's not detained. So her conduct was eminently reasonable. Third, the off-med factors require the court to consider what the inconvenience to the court would have been. And noticeably lacking from the IJ's decision is that there is no inconvenience for the court. She did not explain any reason how she or her a 30-day continuance to compile and translate the evidence that she was seeking. Did the IJ talk about the fact that the petitioner didn't really describe what documents she was seeking? How much notice had been given to the petitioner, which could reflect on the reasonableness of the petitioner's conduct? Wouldn't those two statements sort of bear on at least two of the off-med factors, the nature of the evidence excluded and the conduct of the petitioner? They bear slightly, Your Honor, but they failed to evaluate the full circumstances surrounding this request for continuance. And this court has previously found in situations that a petitioner doesn't fully describe what exactly she's seeking to introduce, alone is not a basis to deny that motion for a continuance. This court held in the Owino case. So even if these factors count as an implied, if these explanations from the IJ count as an implied analysis of some, only some, of the off-med factors, they're still deficient. Assume for a moment that it was an abuse of discretion by the IJ to deny the that the evidence that she would have obtained would have sustained, would have bolstered her story about being beaten in the third episode, the third episode that doesn't show up in a written application, and really that's the basis for the adverse credibility finding. So I'm trying to figure out, even assuming abuse of discretion, how do we know, how do we even have any suspicion that the evidence she would have gotten would have bolstered her account of that third episode? Your Honor, Ms. Lenencio stated at her merits hearing that she was waiting on documents coming from Cuba. Presumably, these are documents from family members speaking to the persecution that they witnessed her suffering. However, ultimately, the IJ precluded Ms. Lenencio from developing that record by failing to let her fully explain what she had intended to collect from Cuba. In fact, she told Ms. Lenencio, I already told you I denied your request. We're not talking about it anymore. So the IJ has precluded this court from really evaluating what kind of evidence, and prevented Ms. Lenencio from explaining what sort of evidence would have been in her presentation, and denied this court an opportunity to fully evaluate that determination. Ms. Day, we still don't know what the evidence is. Ms. Lenencio explained that she would be presenting documents coming from Cuba. But no, the IJ declined any opportunity for Ms. Lenencio to put testimony or evidence or anything into the record about what that evidence would have been. The blue brief states, and I'm reading from page 18 of the blue brief, the evidence, that is to say the evidence she would have obtained had she been granted the continuance. The blue brief says the evidence would have also confirmed her account of the February 2019 incident where she was beaten and threatened by the PNR. How do you know that? Your Honor, Ms. Lenencio's family witnessed the abuse that she suffered from at the hands of the PNR. And to the extent that the court wants Ms. Lenencio to present evidence that goes beyond the record, which we're aware this court doesn't consider. When you say that her family witnessed, I mean, it may well be that the family can say this, but this is an unequivocal statement of what the evidence would show. But you don't know the evidence either, I suspect. You know the evidence you want to get, and maybe you can. We are aware of some evidence, Your Honor, but that evidence was not allowed to be put into the record. But during the hearing, Ms. Lenencio's suspect has said that she could have documentation that she was fired as a teacher. She never said that she could get corroboration of the beating, did she? She was not permitted to fully explain the total circumstances and the total type of evidence that she would be able to obtain. I'm conscious of time, and I'd like to reserve my remaining time for rebuttal. And we'll give you the two minutes. It's 2.20. There's only 24 seconds left, and if necessary, we'll give additional time to the government as well. All right, please go ahead. May it please the court, Matthew George for the Attorney General. As the court has already started to point out in this argument, this is really about what is the evidence that Petitioner wanted to introduce. She never really described it in her motion. She never fully addressed it at the hearing. And to the extent that the immigration judge supposedly prevented her from describing it or presenting it, she could have presented it in her brief to the board, or she could have described it more fulsomely in her brief to this court. At the hearing, didn't she tell the... I'm sorry to interrupt you. At the hearing, didn't Ms. Laurencio tell the immigration judge that she could have documentation to prove that she was fired as a teacher because of her political opinions? I believe there was some discussion about the firing document, whether she could have gotten a copy. That's not the evidence that Petitioner has pointed to in her brief to this court, and it's not really clear how that would go to the adverse credibility determination or the alternative merits finding that the immigration judge made. The key incidents here, I'm not sure there's any doubt that necessarily she was fired or that we need corroboration of that. This was really about the omission of that February 2019 incident. And so if we're talking about things other than that, that really doesn't address the credibility determination, which is the key thing that the agency relied on in denying relief here. Yes, but I understand what you're saying, and obviously our questioning to your adversary shows that we understand that point, but she's uncounseled in front of a fairly hostile, peremptory IJ, and to hold her to the things that she said at that time is, well, you know, you should have said X or Y. That's pretty harsh. Well, Your Honor, she is not necessarily holding her at the time. I mean, she has additional opportunities. One before the board is an opportunity. Was she counseled before the board? I don't believe she was. Right. So same point. But in her opening brief, she represents that shortly after the hearing, she actually got the evidence she wanted to submit. So why couldn't she provide that to the board and say, look, here's the evidence I wanted to present, and then the board can analyze it and say, well, maybe you're right, maybe we do need to send this back. If we never know what the evidence is, how can the agency, how can I respond to what this evidence is, and how can we talk about if it's important or if it's going to make a difference in terms of the relief side? At what point do we actually get to see the evidence and determine what it is? I understand she was pro se, and maybe she didn't get the fairest of shakes or whatever before the immigration judge. I'm sorry to interrupt you, but why would it not be good cause to give a first time, 30 day, which is relatively short, continuance to a detained pro se claimant who doesn't speak English and who is trying to get documents from Cuba, which the BIA and the immigration judge agree is a repressive regime? Well, it again comes back to what is the evidence that she wants to present? She needs to, at some point, tell the agency what that evidence is. That's the first factor in the analysis, right? She tried to do that in the first instance, and the hearing examiner, the IJ, shut her down and said, I've already ruled on your continuance. I don't want to hear it. She lost her motion for continuance. She brought with her whatever she had available at the time, and she tried to present that to the IJ, who told her, I don't want to hear it. Well, at that point, what she had brought was the immigration judge determined that it seemed to relate to her arrival at the border and also determined that it was things she already had in her possession and that she didn't submit according to the evidentiary deadline that the immigration judge had set. Well, but the evidentiary deadline was December 20th. She'd asked for a continuance shortly before that deadline. That continuance was denied. And then the hearing, I mean, these dates are really kind of interesting. The deadline was December 20th. The hearing's on January 3rd. I mean, we're talking over the Christmas, New Year's break. It seems to me that the IJ was being pretty harsh in saying, well, you asked for a continuance. I'm not going to give it to you. The evidence you were supposed to do by December 20th, you're only bringing to me a detained petitioner. I mean, this is not fair. Can I add that this petition was given less than three months to obtain those documents and we've also needed to have those translated. So why isn't there good cause here for a continuance? I mean, that's exactly what the immigration judge pointed out. She she's never explained why did she need more time and what was she even seeking? We don't even have an answer today, Your Honor, of what documents was she was she getting and what are they going to show? I think the court has recognized that. How do we know what they're even representing is what these documents are going to show? Keep coming back to the importance of the evidence. But as you look at the other factors, don't they all weigh in her favor? The reasonableness of her conduct, she she did the only thing she could do. The court denied her continuance, so she brought whatever she had. That seems reasonable. Why wasn't that reasonable? Well, at that point, the evidentiary deadline had run. Courts are allowed to not accept evidence that is submitted after the deadline. Courts all over the place do that. I don't think a district court would accept evidence that someone is trying to submit after an evidentiary deadline. You know, your analogy to district court sounds to me as though you're talking about what happens in a district court in counseled cases. The IJ is in a very different position with an uncounseled petitioner. The IJ actually has a responsibility to fully develop the record and to assist the petitioner in so doing. This IJ did exactly the opposite. But that's not true, Your Honor. The immigration judge allowed her to fully testify. No, the immigration judge did not allow her to introduce that stack of documents that I think, at least I'm kind of inferring from what Mr. She showed up at July the July the 4th, which would have preceded that July 19th deadline. And she didn't even allow that evidence to be introduced. No, you're you're I think you're misrepresenting what happened. Well, what relevance does when she showed up at the border have that that relates to the third party or the third country travel ban, which has been enjoined and the agency didn't rely on that? Well, the relevance it has is if she's if she shows up after the 19th, she doesn't get to apply for asylum. But that's not the basis of the of the agency's decision, the agency did not rely on that bar. And in fact, this court has enjoined that bar. So, yeah, I know I wrote the opinion. Yeah, exactly. That wasn't the basis of the agency's decision. The agency relied on an adverse credibility determination. And then the immigration judge made an alternative finding on on the facts after petitioner fully testified that this this court cases about this issue usually relate to testimony. And she there's nothing about her not being able to testify. She fully testified about her claim. Can I go back to something that you've repeated at least more than once, that the government does not think that the petitioners firing as a teacher for her political opinions is relevant to her claims. Why would that not be relevant to government action or persecution based on political opinion, credibility, corroborating any part of her story? I guess I'm unclear on why you think that's not relevant to her claim. Well, petitioners never mentioned the the firing document is something as a piece of evidence they were trying to get. And no, but you just you conceded at the beginning of your argument that there actually is in the merits hearing record her statement that she thinks she could have gotten those documents when she was asked what corroborating information she could get. I mean, I can find it in the record for you, if that would be helpful. Bronner, is that what the evidence is that we're addressing now? I mean, is that what petitioner says? That's the evidence she sought the continuance to get. Because at the end of the day, this is about an adverse credibility determination and the court said the corroboration needed to go to February 2019 incident. So that's the only thing that really matters here. There wasn't really any need for corroboration that she was a teacher and that she was fired for political reasons. I believe the board actually said, yes, this is about a political opinion. But the fact is she omitted the February 2019 incident from her asylum application and she did provide a no corroboration of that. And she's never said. So you think corroboration of other aspects or other incidents that she's describing in her asylum application would not have any relevance to a credibility determination? That's your position? I'm looking at AR 144 excerpt of record where she talks about that she thinks she could get the documents that corroborated that she was fired based on her political opinion. But anyway, your position is that it would have no relevance to a credibility determination if she could corroborate one of the three incidences that she describes as a basis of her claim and one of the two incidents that are in her application for asylum. That has nothing to do with her credibility. Not not in this instance, because this was about the omission of the February 2019 incident. That was the basis of the adverse credibility determination. That's what the agency was looking for corroboration of. And I see my time has expired. Unless there are any other questions, the court should deny the petition. I want to know how the court was inconvenienced by the first time request for continuance by an incarcerated person who does not speak English. Well, as the immigration judge said, she failed to say what evidence she needed to get, she failed to say what she had done, she failed to say why she needed more time or why the time I don't know if three months is a lot of time. How was the court inconvenienced when the petitioner almost three weeks in advance of the hearing requested a continuance? It's in the discretion of the immigration judge. This is the immigration judge set an evidentiary deadline and set a hearing date. And now it's going to have to be continued if it's granted. And that's something that's in the discretion of the immigration judge. And the court looks at these factors. But the court didn't look at these factors that the immigration judge did not consider the factors. Had she done so, we might not be here. Well, nevertheless, at what point can she not provide the evidence? I mean, if that's what this is going to come down to, I would say the most important thing is the evidence. If she doesn't have evidence to provide, what does it matter if she got a continuance? And she also has this adverse credibility determination that that's never really That determination might have gone differently had had the continuance been granted and Ms. Cespas been able to appear with all of her documentation. But what is that documentation? That's that's the whole point, Your Honor. What what is the documentation? What would it show? We don't know. That's the very point. We don't know. We do know that when she was in front of the IJ, uncounseled and with a translator who seemed to be having serious difficulty with either English or Spanish, I can't tell which, that she said, well, I could get you the papers. I want a continuance for that. We don't know that, but we don't know what she might have been able to obtain. What their story was, of course, as to why she mentioned only the first two episodes was that she was filling out the form with help, pretty clearly not help from an attorney and pretty clearly not help from a native English speaker, given that with the application with its rather difficult English and spelling and so on. She says she was told, we'll just do two. And she did two. And she quit. Now, that may or may not be true. But somehow I just have a feeling that she was given such short shrift, I don't have any confidence in the outcome here. I'll say something that and this one's not on you at all, but it's a bit of history. I've been doing this for a very long time. And during the administration of the second President Bush, there were several IJs who were really problems. They were peremptory. They were harsh. They were unfair. And to the credit of the administration and to the credit of the board, they were very serious about sort of maybe the right word is clearing house or disciplining or elevating the professional competence of the IJs. And it's been a long time since I've seen an IJ as peremptory as this one. I've got a problem with the behavior of this IJ. But at the end of the day, the immigration judge allowed petitioner to fully testify and made an alternative finding on the merits. Well, the IJ allowed her to fully testify, but refused to allow the admission of evidence that she brought with her to the hearing after she had been denied a continuance. What what does the evidence show? What does it show? Please tell me what is it? How can you fault the agency for something we have no idea what it is? Well, that that's the issue. We don't have any idea. How can I respond to nothing? Well, but the issue here is whether the continuance should have been granted. Well, and the judge didn't even look at the documents, right? The immigration judge asked opposing counsel for the government to look through the documents and report to the judge what it is. The judge didn't have it admitted and didn't review it herself. Isn't that right? Yes, because it related to. Things that happened here, she already had it in possession and it was submitted after the evidentiary deadline. But in any event, what does it show? How does it have what the question is, the question the question to me is not what that evidence showed. The question is, what would she have been able to obtain had she gotten a continuance and the preemptive behavior of the IJ with respect, not allowing that evidence and tells me that this IJ is not having at the top of her agenda, giving a fair process. But even even if all that's true, your honor, what is going to be the evidence? When are we going to find out what the evidence is that she wanted the continuance to get? Do we have to go all the way back to the immigration judge and finally they'll tell us? I guess we'll find out what the evidence is if we were to grant the petition and say the continuance should have been granted. But that's putting the cart before the horse. I mean, what what evidence is we don't we don't even know how can you grant it when we don't know what she needed a continuance to get. So you're saying that to prevail here, Miss Cespedes needs to show the court that she would have prevailed at the hearing. No, no. She needs to describe what the evidence is. That's the first factor, the importance of the evidence. Why would she need to do that unless to show that she was prejudiced by the failure of the court to grant her continuance? Isn't that your point? That's that's the first factor in Ahmed and this analysis is what is the evidence that was excluded? That's a factor. And we don't know what what the evidence is, but we do know how the other factors fall out. Her conduct was not unreasonable. I heard nothing about inconvenience to the court. And the other factor is the number of continuances previously granted. This is a first time request. There is also a Ninth Circuit case that says a non-citizen need not always explain exactly what evidence she would have presented. Coleman are 210 F third at 972. And as you've conceded, at least one of the pieces of evidence would be corroboration that she was fired from her lifelong profession as a teacher because of her political opinion. But unless anyone has any further questions, we've had about 17 minutes and 35 seconds with the respondent. And so I don't have any further questions. Let me just ask. OK, thank you very much. Thank you, Mr. George. Let's go back then to Petitioners Council for rebuttal. Go ahead, please. Thank you, Your Honor. I'd just like to make two quick points. First, the alternative basis for denying Ms. Letencio's petition is not before the court because it's not passed on by the BIA. The BIA, in fact, expressly declined to reach any alternative basis for denying Ms. Letencio's petition. Second, the government keeps pointing to and asking, what is the evidence? What is the evidence? But the pernicious thing about this is that we don't have evidence because of the IJ's conduct in the first place. And the hearing was the only opportunity that Ms. Letencio had to build that record. And she was denied that opportunity. Well, that's not quite right. She could have, in her appeal to the board, have submitted additional evidence. Now, she was uncounseled and the practical application of just the real what the real world is might not work that way. But legally, she did have an opportunity to present additional evidence. Your Honor, it's our position, it's our understanding that the BIA does not does not accept new evidence that was not that was not presented to the immigration judge, that they too are bound by the record below. So it's it's unclear how Ms. Letencio could have post hoc added this evidence into the record in the first place. And if there are no further questions, this the court should grant Ms. Letencio's petition for all of the reasons in our papers and for the fact that this case was rife with procedural errors that denied Ms. Ms. Letencio the opportunity to fully and fairly present her case. The petition should be granted. This court should vacate the BIA. I'm sorry to interrupt you, but would you please address the respondents argument about the first Ahmed factor? What is your position on the nature of the evidence that could have been presented if a continuance had been granted? Do you have any further thoughts on that? And if you don't, that's OK. It was addressed during your earlier argument. Yeah, just to recap quickly, the further evidence would have been evidence coming from people in in Cuba who witnessed her persecution, documentation of her firing to the extent she'd be able to get it from the regime that she described as the totalitarian and and possibly statements describing what they witnessed on February 24th, 2019. I. I respectfully request Ms. Letencio respectfully request that this court grant her petition, vacate the BIA's and IJ's decision and remand this case for a new merit hearing. Thank you, Your Honor. Let me just confirm that, Judge Fletcher, do you have any additional questions? Thank you. OK. All right. Well, thank you very much to both Mr. George and Ms. Miranda for your very helpful arguments. Thank you very much. Case is submitted. Thank you. Thank you.
judges: FLETCHER, KOH, Kane